# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL CASE NO.** |
| | : | |
| **v.** | : | **VIOLATIONS: 18 U.S.C. § 371** |
| | : | **(Conspiracy)** |
| | : | |
| **JOSEPH W. WISE,** | : | |
| | : | **UNDER SEAL** |
| **Defendant.** | : | |

## INFORMATION

The United States Attorney informs the Court that:

## COUNT ONE:
## CONSPIRACY TO ENGAGE IN INTERSTATE TRANSPORTATION OF STOLEN PROPERTY AND TRAFFIC IN MOTOR VEHICLE COMPONENTS
### (18 U.S.C. § 371)

## INTRODUCTION

At all times relevant to this count:

1.      Defendant JOSEPH W. WISE lived in Washington, D.C. and was employed as a police officer by the Metropolitan Police Department ("MPD").

2.      A.H. was an unindicted coconspirator who is not charged in this Information.  A.H. has been a friend of defendant WISE since high-school.

3.      R.L. was a friend of defendant WISE and lived in Washington, D.C.

## THE CONSPIRACY

4.      From in or about June, 2003, and continuing through in or about May, 2004, in the District of Columbia and elsewhere, defendant WISE did willfully and knowingly combine, conspire, agree, and confederate with others known and unknown to commit offenses against the United

States, that is:

A.   transporting, transmitting, and transferring in interstate commerce stolen goods, in violation of 18 U.S.C. § 2314; and

B.   trafficking in motor vehicles and their components with falsified, altered, or removed identification numbers, in violation of 18 U.S.C. § 2321.

## THE GOAL OF THE CONSPIRACY

5.   The goal of the conspiracy was for defendant WISE, A.H., and others known and unknown, to enrich themselves by selling stolen luxury vehicles and enjoying said profits for their personal use.

## MANNER AND MEANS OF THE CONSPIRACY

6.   In order to achieve the goal of the conspiracy, defendant WISE and A.H., along with others known and unknown, used the following manner and means, among others:

7.   The essence of the scheme involved the following: (a) defendant WISE would identify an individual interested in buying a stolen luxury vehicle and, thereafter, serve as the buyer's sole contact for purposes of conducting the sale and delivering the stolen luxury vehicle to the buyer; (b) A.H. would identify stolen luxury cars for sale and, after receiving payment from defendant WISE, provide defendant WISE with the stolen luxury car being purchased by the interested buyer.

8.   It was further a part of the conspiracy that A.H. would inform defendant WISE of the availability of stolen luxury vehicles whose vehicle identification number ("VIN") had been respectively altered to prevent detection of the vehicles' legitimate owner.

9.   It was further a part of the conspiracy that defendant WISE would inform the buyer of the available stolen luxury vehicles, accept a deposit from the buyer and deliver the deposit to A.H

2

for purposes of securing the purchase of a stolen luxury vehicle then available for sale.

10.     It was further a part of the conspiracy that defendant WISE would receive the buyer's final payment, deliver the stolen luxury vehicle to the buyer, and, thereafter, provide A.H. with the buyer's final payment for the stolen luxury vehicle.

## OVERT ACTS

11.     Within the District of Columbia and elsewhere, in furtherance of the above described conspiracy and in order to carry out the objects thereof, defendant WISE, A.H., and others known and unknown, committed the following overt acts, among others:

(1)     On or about July 15, 2003, defendant WISE offered to facilitate the sale of stolen luxury vehicle from A.H. to R.L.

(2)     On or about August 6, 2003, defendant WISE met with R.L. at a Mercedes Benz dealership to discuss which type of car R.L. would purchase from A.H.

(3)     On or about August 6, 2003, defendant WISE met with A.H. to discuss R.L.'s interest in purchasing a stolen luxury vehicle from A.H.

(4)     On or about December 19, 2003, in the District of Columbia, defendant WISE received from R.L. a $5,000 deposit for a stolen luxury vehicle.

(5)     On or about January 31, 2004, defendant WISE received $25,000 from R.L. as final payment for the purchase of a stolen luxury vehicle.

(6)     On or about April 19, 2004, defendant WISE received from R.L. $10,000 as down payment on a second stolen luxury vehicle.

(7)     Between on or about April 17, 2004 and April 26, 2004, defendant WISE obtained possession of a stolen Mercedes CLK500 ("CLK500") from A.H. in Upper Marlboro, Maryland.

(8)     On or about April 26, 2004, in the District of Columbia, defendant WISE drove the CLK500 to R.L.'s residence.

(9)     On or about April 26, 2004, R.L. test-drove the CLK500 with defendant WISE.

(10)    On or about April 26, 2004, defendant WISE instructed R.L. to make the final payment on the CLK500 on the following day.

(11)    On or about April 27, 2004, in the District of Columbia, defendant WISE parked the CLK500 in front of R.L.'s residence.

(12)    On or about April 27, 2004, defendant WISE received $20,000 from R.L.

(13)    On or about April 27, 2004, defendant WISE gave R.L. the key to the CLK500.

**(Conspiracy, in violation of Title 18, United States Code, Section 371)**

**COUNT TWO:**
**CONSPIRACY TO COMMIT BANK FRAUD**
**(18 U.S.C. § 371)**

**INTRODUCTION**

1.      Paragraphs one through two of Count One are hereby realleged and incorporated by reference as if set forth in full.

2.      Defendant WISE owned a 1998 Range Rover ("SUV").  To purchase the SUV, defendant WISE received an auto loan from the Police Federal Credit Union ("PFCU").  As of May 31, 2003, defendant WISE owed the PFCU $20,050.64, which was the principal balance remaining on the auto loan.

3.      In or about August, 2002, defendant WISE stopped paying automobile insurance for his vehicle.  Thereafter, the PFCU charged defendant WISE for a more expensive form of automobile insurance, which the PFCU was forced by law to purchase for the SUV.

4

4.      The PFCU is a credit union with accounts insured by the National Credit Union Share Insurance Fund.

## THE CONSPIRACY

5.      From in or about May, 2003, and continuing through in or about June 2, 2003, in the District of Columbia and elsewhere, defendant WISE did willfully and knowingly combine, conspire, agree, and confederate with others known and unknown to commit offenses against the United States, that is, conducting a scheme and artifice to defraud a financial institution, in violation of 18 U.S.C. § 1344.

## THE GOAL OF THE CONSPIRACY

6.      The goal of the conspiracy was for defendant WISE, A.H., and others known and unknown, to pay off the SUV with PFCU funds to which they were not entitled..

## MANNER AND MEANS OF THE CONSPIRACY

7.      In order to achieve the goal of the conspiracy, defendant WISE and A.H., along with others known and unknown, used the following manner and means, among others:  (a) Defendant WISE would  fraudulently report to MPD and the PFCU that his Range Rover SUV had been stolen in order to free himself of the obligation to pay off his automobile loan to the PFCU; and (b) A.H. would obtain the SUV for his own personal use and enjoyment.

## OVERT ACTS

8.      Within the District of Columbia and elsewhere, in furtherance of the above described conspiracy and in order to carry out the objects thereof, defendant WISE, A.H., and others known and unknown, committed the following overt acts, among others:

(1)      In or about May, 2003, through June, 2003, defendant WISE and A.H. agreed that

A.H. would take possession of the SUV and defendant WISE would report the SUV stolen to the police.

(2)     On or about June 2, 2003, in the District of Columbia, defendant WISE parked the SUV with its keys inside on the street and thereafter notified A.H. of the SUV's whereabouts.

(3)     On or about June 2, 2003, in the District of Columbia, defendant WISE identified himself as a police officer and falsely reported his SUV stolen to the Metropolitan Police Department.

**(Conspiracy, in violation of Title 18, United States Code, Section 371)**

**COUNT THREE:**
**CONSPIRACY TO COMMIT BANK FRAUD USING COUNTERFEIT CHECKS**
**(18 U.S.C. § 371)**

**INTRODUCTION**

1.     Paragraph one of Count One is hereby realleged and incorporated by reference as if set forth in full.

2.     R.B. is an acquaintance of defendant WISE.  R.B. lives in Washington, D.C.

3.     J.H. is a friend of defendant WISE and lives in Washington, D.C.  J.H. has known defendant WISE since high-school.

**THE CONSPIRACY**

4.     From in or about January, 2003, and continuing through in or about April, 2003, in the District of Columbia and elsewhere, defendant WISE did willfully and knowingly combine, conspire, agree, and confederate with R.B., J.H., and others known and unknown, to commit offenses against the United States, that is:

A.     transporting, transmitting, and transferring in interstate commerce stolen goods, in

violation of 18 U.S.C. § 2314; and

B.    Conducting a scheme and artifice to defraud a financial institution, in violation of 18 U.S.C. § 1344.

## THE GOAL OF THE CONSPIRACY

5.    The goal of the conspiracy was for defendant WISE, R.B., J.H., and others known and unknown, to enrich themselves by cashing counterfeit and/or stolen checks and enjoying said profits for their personal use.

## MANNER AND MEANS OF THE CONSPIRACY

6.    In order to achieve the goal of the conspiracy, defendant WISE, along with others known and unknown, used the following manner and means, among others:

7.    The essence of the scheme involved the following: (a) defendant WISE would receive counterfeit and/or stolen checks ("the checks") from R.B.; (b) defendant Wise would give the checks to J.H. to cash; and (c) defendant WISE, R.B. and J.H. would share the proceeds from the checks after they had been negotiated.

## OVERT ACTS

8.    Within the District of Columbia and elsewhere, in furtherance of the above described conspiracy and in order to carry out the objects thereof, defendant WISE, R.B., J.H., and others known and unknown, committed the following overt acts, among others:

(1)    In or about January, 2003, in the District of Columbia, defendant WISE gave J.H. a counterfeit and/or stolen check ("January, 2003 check") which defendant Wise had received from R.B.

(2)    In or about January, 2003, J.H. cashed the January 2003 check in Virginia.

7

(3)     In or about January, 2003, J.H. split the proceeds of the January 2003 check with defendant Wise.

(4)     In or about January, 2003, defendant Wise split the proceeds of the January 2003 check with R.B.

(5)     In or about April, 2003, defendant Wise drove from Washington, D.C. to Glendale, Maryland to receive approximately three counterfeit and/or stolen checks ("April, 2003 checks") from R.B.

(6)     In or about April, 2003, defendant WISE received the April, 2003 checks from R.B. in Glendale, Maryland.

(7)     In or about April, 2003, defendant WISE gave J.H. the April, 2003 checks to cash.

**(Conspiracy, in violation of Title 18, United States Code, Section 371)**

KENNETH L. WAINSTEIN
UNITED STATES ATTORNEY
FOR THE DISTRICT OF COLUMBIA

By: _____
JONATHAN N. ROSEN
Assistant United States Attorney
Fraud and Public Corruption Section
555 4th St., N.W.
Washington, D.C.  20530