UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL CASE NO. 06-30 (Sealed) |
| | : | |
| v. | : | VIOLATION: 18 U.S.C. § 371 |
| | : | (Conspiracy) |
| | : | |
| JOSEPH W. WISE, | : | UNDER SEAL |
| | : | |
| Defendant. | : | |

FILED
FEB 1 6 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

### STATEMENT OF OFFENSE

Pursuant to Fed. R. Crim. P. 11, the government, through its undersigned counsel, and defendant Joseph W. Wise, advised by his undersigned counsel, Joseph Beshouri, stipulate and agree that the following facts are true:

STOLEN VEHICLES CONSPIRACY (COUNT ONE)

On or about July 15, 2003, JOSEPH W. WISE asked a friend named R.L. if he was interested in buying a stolen car from A.H.

On or about July 15, 2003, and thereafter, JOSEPH W. WISE told R.L. that A.H. ran a stolen car operation which involved the use of a stolen "VIN" on a stolen luxury vehicle to disguise the identity of the stolen luxury vehicle's true owner. A.H. then sold the stolen luxury vehicles with the stolen VIN to customers for approximately $15,000 to $20,000. The customer was instructed not to take the vehicle to a dealership because the true VIN of the stolen car could be detected. To purchase a vehicle, A.H. generally required a $5,000 deposit. The stolen luxury vehicle was delivered with Washington, D.C. tags, title and registration in the buyer's true name. Upon delivery, the buyer owed the remaining $10,000 to $15,000 to A.H.

On or about August 6, 2003, JOSEPH W. WISE and R.L. drove to EuroMoters in Bethesda,

Maryland to identify what type of stolen vehicle R.L. would purchase from A.H. Thereafter, JOSEPH W. WISE and R.L. drove to the Eastern Market in Washington, D.C., where JOSEPH W. WISE and A.H. spoke about R.L.'s interest in a stolen luxury vehicle. During the conversation between JOSEPH W. WISE and A.H., R.L. remained alone in the car. After speaking with A.H., JOSEPH W. WISE returned to R.L. and stated that A.H. had several vehicles in stock, all of which would cost approximately $17,500. JOSEPH W. WISE told R.L. that JOSEPH W. WISE intended to purchase a Mercedes from A.H. even if R.L. elected not to.

On or about December 4, 2003, R.L. informed JOSEPH W. WISE that R.L. had the $5,000 for JOSEPH W. WISE to give to A.H. as a down payment. On or about December 19, 2003, R.L. gave JOSEPH W. WISE the $5,000 down payment for the purchase of a stolen luxury vehicle. JOSEPH W. WISE then described A.H.'s inventory of stolen vehicles to R.L. JOSEPH W. WISE assured R.L. that JOSEPH W. WISE would obtain a nice car for him. On or about the evening of December 19, 2003, JOSEPH W. WISE and R.L. further discussed the various stolen cars available for purchase from A.H. R.L. told JOSEPH W. WISE that R.L. wanted a Mercedes S430. JOSEPH W. WISE agreed to place an order for a Mercedes S430 with A.H. JOSEPH W. WISE admonished R.L. that it could take a while for A.H. to acquire a Mercedes S430.

On or about January 14, 2004, JOSEPH W. WISE advised R.L. that JOSEPH W. WISE could not provide the Mercedes S430.

Between on or about January 15, 2004 and January 24, 2004, JOSEPH W. WISE advised R.L. that R.L. could purchase a 2004 Mercedes SL500 or a Mercedes CL500 from A.H. JOSEPH W. WISE informed R.L. that the Mercedes SL500 was generally worth $100,000 and the Mercedes CL500 was generally worth $90,000. JOSEPH W. WISE explained that the price of either vehicle

would cost an additional $5,000, thereby making the total price $30,000. JOSEPH W. WISE informed R.L. that A.H. already had the keys to the SL500 and simply needed to get the vehicle. JOSEPH W. WISE further informed R.L. that A.H. had located a Mercedes CL500 to steal the following week, but A.H. did not yet have keys to that vehicle. R.L. told JOSEPH W. WISE that R.L. would take either the Mercedes SL500 or CL500.

On or about January 24, 2004, JOSEPH W. WISE described the transaction for the stolen Mercedes. According to JOSEPH W. WISE, the scheme would work in the following way: A.H. would have the vehicle parked at a location of R.L.'s choice, R.L. would give the $25,000 final payment to JOSEPH W. WISE, JOSEPH W. WISE would deliver the money to A.H., A.H. would give JOSEPH W. WISE the keys to the vehicle, JOSEPH W. WISE would deliver the keys to R.L., and JOSEPH W. WISE would then drive R.L. to the stolen car, which R.L. would then drive away.

On or about January 31, 2004, R.L. gave JOSEPH W. WISE the $25,000 final payment for the stolen car. Later that day, JOSEPH W. WISE returned the $25,000 to R.L. JOSEPH W. WISE explained that the Mercedes SL500 needed a new windshield and, therefore, was not ready for delivery. JOSEPH W. WISE explained that A.H. had to replace the windshield as part of the process of changing the VIN.

In February, 2004, JOSEPH W. WISE informed R.L. that A.H. was still waiting for the windshield to arrive and for an opportunity to install it. On or about February 26, 2004, R.L. asked JOSEPH W. WISE if A.H. had any other cars for sale. JOSEPH W. WISE agreed to check on other available cars. JOSEPH W. WISE advised R.L. that if R.L. still wanted the Mercedes SL500, R.L. would have to wait for the windshield to arrive.

On or about March 28, 2004, JOSEPH W. WISE returned R.L's $5,000 down payment to

R.L. JOSEPH W. WISE explained that he obtained the money from A.H. after JOSEPH W. WISE became frustrated with A.H.'s failure to deliver the Mercedes SL500 to R.L.

On or about April 17, 2004, R.L. spoke with JOSEPH W. WISE to reiterate his interest in buying a stolen car from A.H. On or about April 19, 2004, R.L. gave JOSEPH W. WISE $10,000 for JOSEPH W. WISE to give to A.H. as a down payment on a stolen Mercedes.

Thereafter, between on or about April 17, 2004 and April 26, 2004, JOSEPH W. WISE went to A.H. to take delivery of a stolen Mercedes Benz CLK500 ("CLK500"). A.H.'s associates were present when JOSEPH W. WISE took possession of the CLK500.

On or about April 26, 2004, JOSEPH W. WISE told R.L. that JOSEPH W. WISE was in possession of the CLK500. JOSEPH W. WISE described the car and requested $20,000 from R.L. to complete the sale. In a second telephone call on the same day, JOSEPH W. WISE told R.L. that the price for the CLK500 had increased by $5,000. R.L. complained that the total price for the CLK500 was now $35,000.

Later that evening, on or about April 26, 2004, JOSEPH W. WISE drove the CLK500 to R.L.'s residence. JOSEPH W. WISE and R.L. then drove the CLK500 to a bar in Northwest, Washington, D.C. En route, JOSEPH W. WISE advised R.L. that the tags and registration for the CLK500 were valid and would be delivered to R.L. after R.L. paid the remaining balance. JOSEPH W. WISE told R.L. that A.H. wanted the additional $5,000 because the CLK500 already had hard tags and title. JOSEPH W. WISE also told R.L. that the CLK500's navigation system had to be disconnected. At the end of the evening, JOSEPH W. WISE told R.L. that JOSEPH W. WISE would contact R.L. on the following morning to get the final payment.

On or about April 27, 2004, JOSEPH W. WISE told R.L. that JOSEPH W. WISE would

drive the CLK500 to R.L.'s residence. where R.L. could then make the final payment. Thereafter, JOSEPH W. WISE drove the CLK500 to R.L.'s residence. JOSEPH W. WISE parked the CLK500 in front of R.L.'s residence and then entered another vehicle which had followed JOSEPH W. WISE to R.L.'s residence. Later, JOSEPH W. WISE returned to R.L.'s residence where he received $20,000 from R.L. JOSEPH W. WISE then gave R.L. the key to the CLK500 and left the area. Shortly thereafter, JOSEPH W. WISE gave approximately $20,000 to A.H.

JOSEPH W. WISE does not dispute that the government can establish beyond a reasonable doubt that: (1) the CLK500 was a new luxury vehicle which was stolen on October 7, 2003, from the lot of HBL, LLC, a Mercedes dealership located in Vienna, Virginia; (2) law enforcement obtained possession of the CLK500 on or about April 27, 2004, and determined at that time that the CLK500 had a stolen VIN in its windshield; (3) the stolen VIN on the windshield of the CLK500 in fact corresponded to a 2003 Mercedes CLK500 registered in Evanston, Illinois; and (4) the CLK500 had a sales price of $58,655.

<u>BANK FRAUD CONSPIRACY (COUNT TWO)</u>

On January 27, 1997, JOSEPH W. WISE began working as a police officer with the District of Columbia Metropolitan Police Department ("MPD").

On or about February 5, 2001, JOSEPH W. WISE obtained a loan from the Police Federal Credit Union ("PFCU") to purchase a 1998 Range Rover ("SUV"). In or about August, 2002, JOSEPH W. WISE ceased making his automobile insurance payments for the SUV. As a result, the PFCU charged JOSEPH W. WISE forced automobile insurance on the SUV. The forced automobile insurance imposed by the PFCU was extremely expensive.

In May, 2003, JOSEPH W. WISE agreed to give his SUV to A.H., a high-school friend.

JOSEPH W. WISE knew that A.H. ran a stolen car operation which involved the use of a stolen vehicle identification number ("VIN") on a stolen luxury vehicle to disguise the identity of the true owner of the stolen car. JOSEPH W. WISE agreed to give the SUV to A.H. and to then report his SUV stolen to the police. A.H. agreed to take possession of the SUV with the understanding that JOSEPH W. WISE would then falsely report that the SUV was stolen.

On or about June 2, 2003, in the District of Columbia, JOSEPH W. WISE parked the SUV with keys inside on the street and thereafter notified A.H. of the SUV's whereabouts. JOSEPH W. WISE then falsely reported his SUV stolen to MPD. In the call, JOSEPH W. WISE identified himself as an MPD officer. JOSEPH W. WISE also informed MPD that four MPD uniform shirts were inside the vehicle at the time of its purported theft.

As a result of the stolen report, JOSEPH W. WISE ceased making auto-loan payments to the PFCU for the SUV. As of May 31, 2003, JOSEPH W. WISE owed the PFCU $20,050.64, which was the principal balance remaining on the auto loan.

JOSEPH W. WISE does not dispute that the government can establish beyond a reasonable doubt that the PFCU: (1) was a credit union with accounts insured by the National Credit Union Share Insurance Fund; ND and (2) suffered a loss of $2,251.00.

### COUNTERFEIT CHECK CONSPIRACY (COUNT THREE)

JOSEPH W. WISE knew a personal friend, R.B., who possessed counterfeit and stolen checks. JOSEPH W. WISE told R.B. that JOSEPH W. WISE knew a third party, J.H., who would cash counterfeit and/or stolen checks.

In January, 2003, JOSEPH W. WISE received a counterfeit and/or stolen check ("January, 2003 check") from R.B. JOSEPH W. WISE gave the January, 2003 check to J.H. The January,

2003 check was in the amount of $3,440. J.H. cashed the January, 2003 check at a check cashing store in Virginia. Thereafter, J.H. met with JOSEPH W. WISE to split the proceeds from the January, 2003 check. JOSEPH W. WISE later gave R.B. a portion of the proceeds from the January, 2003 check.

In April, 2003, JOSEPH W. WISE met with R.B. in Glendale, Maryland, to receive approximately three additional counterfeit and/or stolen checks ("April, 2003 checks") from R.B. The April, 2003 checks were each in the amount of $2,000-$3,000. JOSEPH W. WISE gave the April, 2003 checks to J.H. for purposes of having J.H. cash the April, 2003 checks and, thereafter, provide JOSEPH P. WISE with the ensuing proceeds. JOSEPH W. WISE intended to share the proceeds of the April, 2003 checks with J.H. and R.B.

During this same time period, JOSEPH W. WISE received a $45,000 counterfeit and/or stolen check ("$45,000 check") from R.B. JOSEPH W. WISE gave the $45,000 check to a friend, N.L. N.L. had previously asked JOSEPH W. WISE for a large check to cash because N.L. knew where to go to cash a counterfeit and/or stolen check. JOSEPH W. WISE intended to share the proceeds of the $45,000 check with N.L. and R.B.

> Respectfully submitted,
>
> KENNETH L. WAINSTEIN
> UNITED STATES ATTORNEY
> FOR THE DISTRICT OF COLUMBIA
>
> By: _____
> JONATHAN N. ROSEN
> Assistant United States Attorney
> Fraud & Public Corruption Section
> 555 4th Street, N.W.,
> Washington, D.C. 20530

## DEFENDANT'S ACCEPTANCE

I have read every word of this Statement of Offense. Pursuant to Fed. R. Crim. P. 11, after consulting with my attorney, Joseph Beshouri, I agree and stipulate to this Statement of Offense.

Date: 2/16/06

_____
Joseph W. Wise
Defendant

I have discussed this Statement of Offense with my client, Joseph W. Wise. I concur with his decision to stipulate to this Statement of Offense.

Date: 2/16/06

_____
Joseph Beshouri
Attorney for the Defendant